
FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2011 FEB -2 PM 2:25
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

GLENN CODY, )
 )
    Plaintiff, )
 )
v. ) CASE NO. CV409-104
 )
MANAGEMENT INTERNATIONAL )
LONGSHOREMEN'S ASSOCIATION )
(MILA) NATIONAL HEALTH PLAN )
and GEORGIA FARM BUREAU MUTUAL )
INSURANCE CO., )
 )
    Defendants. )
_____)

## O R D E R

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 26) and Defendant Georgia Farm Bureau Mutual Insurance Co.'s ("Farm Bureau") Cross-Motion for Summary Judgment (Doc. 29). Defendant Management International Longshoremen's Association (MILA) National Health Plan ("MILA") has not filed an independent motion, but it has opposed Plaintiff's motion. (Doc. 33.) For the reasons below, Plaintiff's motion for summary judgment is **GRANTED** as to Defendant MILA and **DISMISSED** as to Defendant Farm Bureau. (Doc. 26.) Defendant Farm Bureau's motion for summary judgment is **GRANTED**. (Doc. 29.) A brief summary of this dispute is as follows.

## BACKGROUND

At first glance, this case appears to be a classic insurance proceeds based interpleader action, in which a plaintiff typically seeks a judicial determination of the rightful recipient of settlement funds. This case, however, includes an additional twist by including one Defendant who is claiming money from Plaintiff and another Defendant against whom Plaintiff has conditionally asserted a claim.

Plaintiff Glenn Cody was involved in an automobile accident on October 24, 2004 with another vehicle, which was driven by Lakisha Gusby. (Doc. 10 ¶ 6; Doc. 27 ¶ 2.) Although Plaintiff incurred medical expenses exceeding $29,500.00 and an estimated $30,000.00 in lost wages, Plaintiff has recovered only a $25,000.00 policy limits settlement from Ms. Gusby's insurer, Infinity Insurance. (Doc. 10 ¶¶ 6, 8; Doc. 27 ¶¶ 6, 11; Doc. 27, Ex. B ¶ 7.) As consideration for the settlement, Plaintiff executed a "Limited Release Pursuant to O.C.G.A. § 33-24-41.1" (Doc. 27 at 25-28), which had the effect of releasing the "insured tort-feasor covered by the policy of the settling carrier from all personal liability from any and all claims arising from the occurrence on which the claim is based <u>except to the extent other insurance coverage is available</u> which covers such claim or claims." O.C.G.A. § 33-24-41.1(b)(2) (emphasis

added). That policy limits settlement remains in the trust account of Plaintiff's attorney. (Doc. 10 ¶ 8; Doc. 27 ¶ 13.)

Defendant MILA is a health insurance plan that provided payment of $17,632.18 on Plaintiff's $29,500.00 in medical expenses arising out of the above accident. (Doc. 10 ¶¶ 1, 9; Doc. 26 ¶ 6; Doc. 27 ¶ 13.) Since that time, Defendant MILA has placed an equitable lien of $17,632.18 against the settlement funds and seeks reimbursement of the benefits paid on Plaintiff's behalf. (Doc. 10 ¶ 10; Doc. 27 ¶ 13.) Plaintiff has requested that this Court determine the validity of Defendant MILA's lien and what, if any, extent Defendant MILA is entitled to recover on that lien from the settlement proceeds. (Doc. 10 ¶ 14.)

The role of Defendant Farm Bureau in this dispute is related, but its liability, if any, is conditioned on this Court's resolution of the dispute between Plaintiff and Defendant MILA. Plaintiff was insured by Defendant Farm Bureau and, as a component of his policy, purchased uninsured/underinsured motorist (UM) coverage. (Id. at 11; Doc. 27 ¶ 4.) However, the limit of that UM coverage was $25,000. (Doc. 10 at 11; Doc. 27 ¶ 4.) Defendant Farm Bureau has disputed the applicability of UM coverage to the facts of this case. (Doc. 10 at 12; Doc. 31.)

3

**ANALYSIS**

I.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

4

> believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II. THE VALIDITY OF DEFENDANT MILA'S LIEN

The analysis of the liability, if any, of Defendant Farm Bureau is dependent on the Court's resolution of the dispute between Plaintiff and Defendant MILA. Accordingly, the Court will first address Plaintiff's motion for summary judgment

5

against Defendant MILA. (Doc. 26.) Although Defendant MILA has opposed the grant of that motion (Doc. 33), it has not moved for summary judgment against Plaintiff or filed a cross-motion for summary judgment.

This dispute centers around the applicability of the "make whole" doctrine to this case, a principle that normally bars subrogation where the insured has not been fully compensated for his or her injury or damages. While Plaintiff concedes that the Georgia "make whole" rule does not apply because of Employee Retirement Income Security Act ("ERISA") preemption, he argues that a similar doctrine exists under federal common law and precludes Defendant MILA from any recoupment. (Doc. 16, Attach. 1 at 2.) In Cagle v. Bruner, 112 F.3d 1510, 1521 (11th Cir. 1997), the "make whole doctrine" was adopted as the default rule in ERISA cases in this circuit. That rule still applies in the Eleventh Circuit today. See Brown & Williamson Tobacco Corp. v. Collier, 2010 U.S. Dist. LEXIS 36505, at *13-*14 (M.D. Ga. Apr. 13, 2010). This rule is, however, only a default one; the parties, by the terms of the ERISA plan, are free to contract out of that doctrine's application. Cagle, 112 F.3d at 1521.

However, specific language over and above the reservation of typical subrogation rights is required to escape the default rule. Id. at 1521-22 ("[S]tandard subrogation language . . . does not demonstrate a specific rejection of the make whole

6

doctrine . . . ."). As the Eleventh Circuit has held, "[a]n ERISA plan overrides the make whole doctrine only if it includes language specifically allowing the Plan the <u>right of first reimbursement</u> out of any recovery [the participant] was able to obtain even if [the participant] were not made whole." <u>Id.</u> at 1522 (internal quotation and citation omitted) (alterations in original) (emphasis added). This is the case regardless of the existence of the administrator's discretion to interpret the plan. (<u>Id.</u>) Therefore, an analysis of the language utilized in this ERISA plan is required.

The ERISA plan language applicable to this case is the MILA plan with an effective date of January 24, 2003. This plan remained effective well past the date of the last claim related to this case, which was in January 2005. (Doc. 26, Attach. 1 at 4-5.) Although another plan took effect on August 1, 2006, it is not relevant to this dispute. (Doc. 27 at 12.) The relevant language from the applicable ERISA plan, which was effective from January 1, 2000 through July 31, 2006 ("Applicable Plan") (<u>Id.</u>), is as follows:

> Section 9.01. <u>Plan Benefits Are Subject To Right To Subrogate.</u> In the event of any payment under this Plan, the Plan shall, to the extent of such payment, be subrogated to all the rights of recovery of the covered individual arising out of any claim or cause of action which has accrued or may accrue because of alleged negligence of any other claim against a third party for the injuries or conditions which resulted in the payments. This includes, but is not limited to, the right of the Plan to sue such third party directly

7

in the place and stead of the covered individual, or the personal representative of same. Any such covered individual, by filing for benefits, and the personal representative of same, as follows:

   a. agrees to reimburse the Plan for any and all benefits so paid hereunder, out of any and all monies recovered from such third party as the result of suit, judgment, settlement, or otherwise; and whether the recovery be designated as medical expenses or otherwise;

   b. agrees that no settlement will be made nor release given without prior notification to the Plan;

   c. agrees to transfer and assign to the Plan all rights, title and interest in and to any and all monies that may be recovered as a result of any claim or suit arising out of the loss or injury to the extent of any and all payments made by the Plan relating to such loss or injury and agrees to authorize that such amount be deducted from any and all recoveries that may be received by the covered individual's attorney or representative and be paid over directly to the Plan; and

   d. agrees to take such action, to furnish such information and assistance, and to execute and deliver all necessary instruments as the Plan may require to facilitate the enforcement of its rights.

(Id. at 14-15 (emphasis in original).) The Applicable Plan includes only standard subrogation language. Notably absent from this Section of the Applicable Plan is any mention of the "make whole" doctrine, synonym thereof, or expression of any similar concept in any other form. A comparison of the Applicable Plan to similar provisions that were the subject of opinions by other courts in this circuit is telling. In Diamond

8

Crystal Brands, Inc. v. Wallace, 2010 U.S. Dist. LEXIS 48684 (N.D. Ga. Feb. 11, 2010) (unpublished), that court found the following language sufficient to contract out of the make whole doctrine:

> No consent or agreement of the Plan to reduce its recovery for any reason shall be implied either in fact or in law by any doctrine or rule of law to the contrary . . . Except as otherwise agreed by the Plan in writing, the proceeds shall be applied first to the Plan's recovery, whether o [sic] not any Covered Individual, dependent or other Recipient is or would be fully compensated, <u>notwithstanding any "Made-Whole Doctrine,"</u> . . . <u>or any other law</u> which would otherwise <u>require</u> a Covered Individual, depend or other Recipient <u>to be compensated before reimbursement of a subrogee</u>.

Diamond Crystal, 2010 U.S. Dist. LEXIS 48684, at *24-*25 (emphasis added). Another court reached the same result on the basis of a plan that mentioned "being made whole," which read as follows:

> If the covered person or his or her legal representative:
>
> - makes any recovery from any of the sources described above; and
>
> - fails to reimburse Great-West for any benefits which arise from the Illness, sickness or bodily injury;
>
> then:
>
> - the covered person or his or her legal representative will be personally liable to Great-West for the amount of the benefits paid under this Plan; and
>
> - Great-West may reduce future benefits payable under this Plan for any Illness, sickness or

9

> bodily injury by the payment that the covered person or his or her legal representative has received from the Other Party.
>
> Great-West's <u>first lien rights will not be reduced</u> due to the covered person's own negligence; or <u>due to the covered person not being made whole</u>; or due to attorney's fees and costs.

<u>Great-West Life & Annuity Ins. Co. v. Brown</u>, 192 F. Supp. 2d 1376, 1380 (M.D. Ga. 2002) (emphasis added).

In contrast, the Eleventh Circuit applied the make whole doctrine even in the face of the following contract language:

> To the extent that benefits for services are provided hereunder, the Southeastern Ironworkers Welfare Fund shall be subrogated and succeed to any rights of recovery of the covered persons because of such services against any person or organization, except insurers on policies of health insurance covering the covered persons. The covered persons shall pay over to the Southeastern Ironworkers Welfare Fund all amounts recovered by suit, settlement or otherwise from any third person or his insurer to the extent of benefits provided hereunder. The covered persons shall take such action, furnish such information and assistance, and execute such instruments as the Southeastern Ironworkers Welfare Fund may require to facilitate enforcement of its rights hereunder, and shall take no action prejudicing the rights and interests of the Southeastern Ironworkers Welfare Fund hereunder.

<u>Guy v. Se. Iron Workers' Welfare Fund</u>, 877 F.2d 37, 38 (11th Cir. 1989). Even the following language providing for express reduction of benefits was insufficient to reject the application of the make whole doctrine:

> An Employee for whom Disability Benefits are payable under this Policy may be eligible for benefits from Other Income Benefits. If so, the Insurance Company may reduce the Disability Benefits of such Other income Benefits." "Other Income Benefits" include: "2.

any Social Security disability or retirement benefits the Employee or any third party receives . . . 5. any amounts paid because of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise. . . ."

Smith v. Life Ins. Co. of N. Am., 466 F. Supp. 2d 1275, 1286 (N.D. Ga. 2006). Therefore, on the basis of these comparisons, the relevant case law, and an analysis of the language of the Applicable plan, the Court concludes that this ERISA plan does not effectuate an opt-out of the default "make whole" rule of the Eleventh Circuit.

This conclusion becomes more evident by contrasting the above Section with language from Defendant MILA's updated ERISA plan, which became effective on August 1, 2006. (Doc. 27 at 12.) This plan includes a separate subsection that states,

> 9.03.02 <u>Plan's Right of Recovery</u>. If benefits are paid by the plan and the covered individual or the covered individual's eligible dependent recovers from a third party by settlement, judgment, insurance proceeds or otherwise, the Plan has the right to recover from the covered individual or the covered individual's eligible dependent an amount equal to the amount paid by the Plan. The covered individual's or the covered individual's eligible dependent's <u>right to be made whole is superseded by the Plan's right to reimbursement</u>.

(Doc. 27 at 20 (first emphasis in original; second emphasis added).) The addition of this language and its absence from the Applicable Plan, while not impacting this Court's decision in any way, is supportive of it. Further, Defendant MILA does little, if anything, to contest this characterization of the

11

Applicable Plan language. Defendant MILA's only response directed at the topic stated that "even if the plan language does not specifically overcome the make whole doctrine, an insured can only benefit from the make whole doctrine if he has complied with the plan provisions setting forth the insured's obligation with respect to the plan's right to subrogation." (Doc. 33 at 1.) The Court will now address Defendant MILA's argument.

III. <u>PLAINTIFF'S COMPLIANCE WITH THE ERISA PLAN AND CONTINUED APPLICABILITY OF THE MAKE WHOLE DOCTRINE AS THE DEFAULT RULE</u>

Defendant MILA, as its primary responsive argument to Plaintiff's motion for summary judgment, argues that the make whole doctrine is inapplicable to this case because Plaintiff has breached the terms of the ERISA plan. (Doc. 33 at 1-3.) Defendant MILA's position can be summarized by this statement: "[A]n insured can <u>only</u> benefit from the make whole doctrine <u>if</u> he has complied with the plan provisions setting forth the insured's obligation with respect to the plan's right to subrogation." (Doc. 33 at 1 (emphasis added).) Indeed, the contrapositive of that logical statement would be that unless a participant complies with ERISA plan provisions, then the make whole doctrine does not provide a benefit. As support for such an extreme statement, Defendant MILA relies on a single court case with limited appellate history and citing authority. (Id. at 2.)

12

That case, Adelstein v. Unicare Life & Health Ins. Co., 135 F. Supp. 2d 1240 (M.D. Fla. 2001), is a district court decision adopting the report and recommendation of a magistrate judge over objections. Although the Eleventh Circuit did affirm the opinion, it did so in an expressly unpublished decision, consisting of all of four paragraphs and less than one full column of a page. Adelstein v. Unicare Life & Health Ins. Co., 27 Employee Benefits Cas. (BNA) 1370 (11th Cir. 2002) (unpublished). For the reasons that follow, Defendant MILA's reliance on that case is misplaced.

First, the language of the plan in Adelstein and the Applicable Plan are wholly different. Notably, the result in Adelstein is easily explained as the mere result of implementing the terms of the ERISA plan applicable to that case, which stated that the

> [f]ailure of a covered person to give notice to the insurer or to cooperate with the insurer, or a covered person's actions that prejudice the insurer's rights or interest, <u>will be a material breach</u> of this group policy <u>and result in the covered person being personally responsible for reimbursing the insurer</u>.

Adelstein, 135 F. Supp. 2d 1240, 1252-53 (emphasis added). In contrast, the Applicable Plan does not provide nearly so extreme a remedy and instead states, in Section 9.01.03 titled "Penalties for Failure to Comply," only that "Failure to provide necessary information or to reimburse the Plan within four weeks after recovery of any sum <u>shall disqualify the covered</u>

13

<u>individual and his dependents from receiving any future benefits under the Plan.</u>" (Doc. 27 at 15 (first emphasis in original; second emphasis added).) The record in this case indicates that Defendant MILA exercised its rights under this provision by letter on January 18, 2006 by suspending benefits under the Applicable Plan. (Doc. 33 at 18.) Indeed, the Eleventh Circuit recognized in <u>Adelstein</u> that the "insured has breached notice, cooperation, and prejudice requirements <u>which expressly provide that the insured will be personally responsible for the reimbursement amount</u> . . . ." <u>Adelstein</u>, 27 Employee Benefits Cas. (BNA) at 1371 (emphasis added). The language of the ERISA plan quoted in the <u>Adelstein</u> district court decision indicates that the court was merely enforcing the terms of the agreement between the plan participant and the plan. That court concluded that

> [t]he insurance policy and benefit plan here clearly provides the consequences of a material breach of the cooperation and information sharing provisions of the agreements—the Adelsteins become personally liable to Unicare for reimbursement. <u>Nothing</u> in Cagle <u>makes such contractual agreements unenforceable</u> under the circumstances presented here. Unicare is entitled to subrogation and reimbursement as a matter of law.

<u>Adelstein</u>, 135 F. Supp. 2d at 1253 (emphasis added). Likewise, nothing in the Applicable Plan provides for personal liability against Plaintiff for failure to comply with the Applicable Plan.

14

Finally, this Eleventh Circuit opinion is, after all, unpublished. Despite the passing of nearly a decade, the district court's decision has not been cited beyond immediate appellate review. Defendant MILA has neither cited, nor has this Court been able to locate, any other authority that would lead this Court to an opposite conclusion. Instead, the Adelstein decision appears to be one confined to its facts, which consisted of a very different ERISA plan. Far from Defendant MILA's characterization, it does not create a condition precedent to every application of the make whole doctrine.

The Court concludes that the Adelstein opinion, even if intended to be the controlling law for this Circuit, was based on easily distinguishable circumstances. Therefore, the make whole doctrine remains applicable in this case. For the reasons above, Plaintiff's motion for summary judgment as to Defendant MILA is **GRANTED**.

IV. APPLICABILITY OF PLAINTIFF'S UNINSURED/UNDERINSURED MOTORIST INSURANCE COVERAGE

Finally, the Court turns to the last issue of this case: the motions filed against and by Defendant Farm Bureau. Plaintiff has moved for summary judgment against Defendant Farm Bureau under Plaintiff's UM coverage. (Doc. 26, Attach. 1 at 6.) However, Plaintiff's motion conditioned this request for relief on the existence of Defendant MILA's lien against

Plaintiff's settlement proceeds. (Id. ("[I]f . . . MILA has a lien, . . . then Plaintiff's UM coverage under his Georgia Farm Bureau Policy is triggered.").)

Based on the Court's ruling as to the applicability of the make whole doctrine and that the Adelstein decision is inapposite, the Court sees no need to address the issue raised in any greater detail than necessary to resolve this case. Accordingly, Plaintiff's motion for summary judgment (Doc. 26) is **DISMISSED** as to Defendant Farm Bureau, and Defendant Farm Bureau's motion for summary judgment (Doc. 29) is **GRANTED**.

## CONCLUSION

Plaintiff's motion for summary judgment is **GRANTED** as to Defendant MILA and **DISMISSED** as to Defendant Farm Bureau. (Doc. 26.) Defendant Farm Bureau's motion for summary judgment (Doc. 29) is **GRANTED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 2ND day of February 2011.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA